UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WAYNE M. CLARKE,

                              Plaintiff,

        v.                                                **DECISION AND ORDER**
                                                          18-CV-301S
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

        1.      Plaintiff Wayne M. Clarke challenges the determination of an Administrative

Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act

("the Act").  Plaintiff alleges that he has been disabled since November 27, 2013, due to

several mental and physical impairments that render him unable to work, and thus, that

he is entitled to disability benefits under the Act.

        2.      Plaintiff applied for Title II Social Security Disability ("SSD" or "DIB") benefits

on January 20, 2014, alleging a disability onset date of November 27, 2013.  Following a

hearing on June 17, 2016, the ALJ denied Plaintiff's application on September 14, 2016,

finding that Plaintiff was not disabled.  Plaintiff then sought review by the Appeals Council,

which denied his request on January 4, 2018.  Plaintiff timely filed the current action on

February 28, 2018, challenging the Commissioner's final decision[1].

        3.      On August 15, 2018, Plaintiff filed a Motion for Judgment on the Pleadings

under Rule 12 (c) of the Federal Rules of Civil Procedure.  (Docket No. 7.)  On November

15, 2018, Defendant filed a Motion for Judgment on the Pleadings.  (Docket No. 13.)

---

[1] The ALJ's September 14, 2016 decision became the Commissioner's final decision in this case when the
Appeals Council denied Plaintiff's request for review.

Plaintiff filed a reply on December 16, 2018, at which time this Court took the motions under advisement without oral argument. (Docket No. 17.) For the following reasons, Plaintiff's motion is granted, Defendant's motion is denied, and this case is remanded to the Commissioner for further proceedings.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405 (g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence

may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8.      Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423 (d)(2)(A); 20 C.F.R. § 404.1520 (f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity ("SGA") since November 27, 2013, the alleged onset date (R. at 29[2]); (2) Plaintiff has severe impairments including multiple back and spine issues, hypertension, and migraine headaches (R. at 29-30); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the C.F.R. (R. at 30-1); (4) Plaintiff retained the residual functional capacity ("RFC") to

---

[2] Citations to the underlying administrative record are designated as "R."

4

perform sedentary work as defined in 20 C.F.R. § 404.1567 (a)[3], with exceptions[4] (R. at 31); (5) Plaintiff is capable of performing past relevant work as a telemarketer (R. at 36). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act during the relevant period.

10.     In addition to other challenges, Plaintiff argues that the ALJ misapplied the treating-physician rule to his primary care physician, Dr. William Blymire.  The treating-physician rule requires that an ALJ give controlling weight to a treating source's opinion on the issues of the nature and severity of a claimant's impairments, if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  See 20 C.F.R. §§ 404.1527 (c)(2), 416.927 (c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).  If the ALJ does not give controlling weight to a treating source's opinion, he or she must apply several factors to determine what weight to afford the opinion, which include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree to which the medical source supported his opinion; (4) the degree of consistency between the opinion and the record as a whole; (5) whether the opinion is given by a specialist; and (6) other evidence which may be brought to the attention of the ALJ.

Morrillo v. Apfel, 150 F. Supp. 2d 540, 545-46 (S.D.N.Y. 2001); see also Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2018); 20 C.F.R. §§ 404.1527 (c), 416.927 (c).

---

[3] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

[4] The ALJ further reduced the RFC such that the Plaintiff can occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl. He cannot climb ladders, ropes, scaffolds. He also requires a work environment with no greater than moderate noise.

11.     But as this Court has previously recognized, an ALJ "does not have to explicitly walk through these factors, so long as the Court can 'conclude that the ALJ applied the substance of the treating physician rule . . . and provide[d] 'good reasons' for the weight [the ALJ] gives to the treating source's opinion.'" Hall v. Colvin, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014) (quoting Halloran, 362 F.3d at 32); see Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (explaining that ALJ need not undertake a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear"). If the ALJ rejects the treating physician's opinion as controlling, he or she must have "good reasons" for doing so and must explain those reasons to the claimant. 20 C.F.R. § 416.927 (c)(2); accord Schaal v. Apfel, 134 F.3d 496, 503-04 (2d Cir. 1998).

12.     Dr. Blymire is Plaintiff's treating physician and primary doctor. Dr. Blymire began treating Plaintiff in November 2014, roughly one year after Plaintiff's disability onset date. (R. at 548-552.) Over the course of the ensuing 18 months, Dr. Blymire saw and examined Plaintiff 19 times to treat a variety of conditions, including chronic neck and back pain, migraines, hypertension, poor sleep, and a foot injury. (R. at 548-604.) Dr. Blymire was thus intimately familiar with Plaintiff and his various medical conditions.

13.     Following an examination on June 11, 2016, just before the ALJ hearing, Dr Blymire determined that Plaintiff was "disabled due to his neck and back injuries and pain." (R. at 545, 602-604.) He followed this determination by completing a Physical Medical Source Statement form nine days later, on June 20, 2016. (R. at 605-609.) In that statement, Dr. Blymire listed Plaintiff's diagnoses as cervical and lumbar disc disease affected by anxiety, with symptoms of constant pain in his back and neck. (R. at 605,

6

606.)  Plaintiff's symptoms were confirmed by objective signs and clinical findings, which included limited range of motion and tenderness in the spine.  (R. at 605.)

14.     As far as Plaintiff's ability to function in a competitive work situation, Dr. Blymire opined that Plaintiff could walk two city blocks without rest or pain, could sit for 30 minutes before needing to rise, could stand for 20 minutes before needing to sit or walk, and could sit and stand/walk for less than two hours in an 8-hour day.  (R. at 606.) Dr. Blymire further opined that Plaintiff would need a job that permits shifting positions at will and walking every 30 minutes for at least 10 minutes.  (Id.)  He would also need to take 10-minute unscheduled breaks to rest every two or three hours due to pain, paresthesia, and numbness.  (Id.)

15.     Dr. Blymire further found that Plaintiff could lift 10 lbs. or less occasionally (6%-33% of an 8-hour work day) and never lift more than 20 lbs.  (R. at 607.)  He also concluded that Plaintiff could rarely twist and stoop (1%-5% of an 8-hour work day), could never crouch or squat, could occasionally climb stairs, and could rarely climb ladders. (Id.)

16.     Finally, Dr. Blymire determined that Plaintiff would be "off task" due to his symptoms interfering with attention and concentration for 10% of a work day and would be capable of only low stress work.  (R. at 608.)  Dr. Blymire opined that Plaintiff would have "good days" and "bad days" and would likely be absent from work due to his impairments about four days per month.  (Id.)

17.     The ALJ afforded limited weight to both Dr. Blymire's Physical Medical Source Statement and his ultimate conclusion that Plaintiff is disabled.  As to the statement, the ALJ afforded it little weight because (1) "it is mostly checked boxes," and

(2) "there is an insufficient explanation for the specific limitations." (R. at 35.) As to the ultimate conclusion, the ALJ afforded it little weight because it was (1) conclusory, (2) "unsupported by the accompanying treatment records," and (3) pertained to an issue reserved to the Commissioner. (Id.) For the reasons stated below, this Court finds that the ALJ's treatment of Dr. Blymire did not comport with the treating-physician rule.

18.    First, while it is true that Dr. Blymire used a form to complete the Physical Medical Source Statement, it is an incorrect oversimplification to say that the statement is just "mostly checked boxes." (R. at 35.) The format of the 5-page statement contains both open-ended questions and detailed inquiries with pre-printed responses to be circled by the provider, as appropriate. The form is detailed and designed to elicit specific information relevant to determining the severity of an individual's medical conditions and the affect they may have on his or her ability to work. The form requires specific assessments of symptoms, severity of pain, clinical findings, and objective signs, as well as a functional assessment typical to an RFC determination. The fact that the responses are not entirely narrative does not detract from the substance of the opinion. Consequently, the ALJ's rejection of Dr. Blymire's opinion based on its form is not a "good reason" to depart from the treating-physician rule. See Czerniak v. Berryhill, 17-CV-6123 (JWF), 2018 WL 3383410, at *3 (W.D.N.Y. July 11, 2018) (finding that the ALJ failed to "comply with either the spirit or the letter of the treating physician rule" by rejecting a treating physician's opinion that was expressed on a form with "merely check boxes").

19.    Second, the ALJ offers no explanation for his conclusory findings that "there is an insufficient explanation for the specific limitations" in the statement and that Dr. Blymire's opinion that Plaintiff is disabled is "unsupported by the accompanying treatment

8

records." (R. at 35.) The ALJ does not explain either of these findings, contrary to the mandate that he provide "good reasons" for rejecting a treating physician's opinion. Eighteen months' worth of medical records detailing nearly monthly examinations of Plaintiff by Dr. Blymire underlie Dr. Blymire's opinion. The ALJ pays short shrift to these examinations, noting them mostly only in passing. (R. at 33-34.) For example, these records include a series of MRIs from July 16, 2013, that show cervical disc protrusions at C3-4, a C4-5 disc herniation slightly indenting the ventral spinal cord, a C5-6 disc space narrowing and spondylosis with a disc herniation, a C6-7 disc protrusion, and a C7-T1 disc herniation. (R. at 258-60.) Lumbar imaging showed an L4-5 disc bulge effacing the exiting L4 nerve roots along with an L5-S1 annular tear and herniation effacing the S1 nerve roots. (R. at 261-2.) The records also contain an abnormal brain MRI revealing subcortical T2 hyper intensities and two prominent areas of cystic encephalomalacia, consistent with a history of traumatic brain injury. (R. at 478.) The ALJ does not meaningfully explain why these and other medical records are insufficient to support Dr. Blymire's opinion. Given the absence of such an explanation, the ALJ failed to provide good reasons for his rejection of Dr. Blymire's opinion.

20. Defendant argues that the ALJ did not err because a treating physician's opinion is not entitled to controlling weight when it is internally inconsistent or inconsistent with other evidence. While this is generally true, see Halloran v. Barnhart, 362 F.3d at 32, these are not the reasons the ALJ discounted Dr. Blymire's opinion. The ALJ expressly discounted Dr. Blymire's opinion for the reasons stated above, none of which are "good reasons." This Court can only examine the ALJ's stated findings and cannot accept the government's post-hoc rationalizations for an ALJ's decision. See Snell v.

<u>Apfel</u>, 177 F.3d 128, 134 (2d Cir. 1999) (noting that a reviewing court "may not accept appellate counsel's *post hoc* rationalizations for agency action.")    Consequently, Defendant's arguments are unpersuasive.

21.    This Court finds that remand is required for the ALJ to properly consider the opinion of Plaintiff's treating physician, Dr. Blymire, and to fully explain his weighing of that opinion.  The ALJ should also consider, if appropriate, the other errors that Plaintiff ascribes to him—failing to find his mental health condition "severe"; failing to incorporate non-exertional limitations, "off-task" time, or work absences into his RFC; and failing to properly consider his limited daily activities.  This Court offers no opinion on these arguments at this time since this case is being remanded on other grounds.

22.    After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision.  Plaintiff's motion for judgment on the pleadings is therefore granted. Defendant's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:          October 1, 2019
                Buffalo, New York


                                              s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge